IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| DAVID BOLING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | )   No. 05-1129-T-An |
| | ) |
| | ) |
| GIBSON COUNTY, et al., | ) |
| | ) |
| Defendants. | ) |

ORDER GRANTING MOTION TO DISMISS AND/OR FOR SUMMARY
JUDGMENT OF DEFENDANTS GIBSON COUNTY, SHEPHERD,
MADISON COUNTY, WOOLFORK, BUNTIN, AND JANE AND JOHN DOES

Plaintiff David Boling has filed this action pursuant to 42 U.S.C. § 1983 against Gibson County, the Gibson County Sheriff's Department, Gibson County Sheriff Joseph Shepherd, the City of Medina, the City of Medina Police Department, Medina Chief of Police James Baker, Investigator Chad Davis of the Medina Police Department, Madison County, the Madison County Sheriff's Department, Madison County Sheriff David L. Woolfork, and Tommy G. Buntin, a deputy of the Madison County Sheriff's Department,[1] and an unidentified group of law enforcement personnel for the City of Medina, Gibson County, and Madison County ("John and Jane Does"). In his second amended complaint, Plaintiff added Gibson County Deputy Clerk Dawn Turner as a defendant. Plaintiff asserts

---

[1] Defendants have presented unrefuted evidence that Defendant Buntin was retired from the Madison County Sheriff's Department during the events giving rise to this action.

that his constitutional rights were violated when he was arrested and detained for three days.[2]

Defendants Gibson County, Madison County, Woolfork, Shepherd, Buntin, and John and Jane Does have filed a motion to dismiss and/or for summary judgment [Docket # 46]. Plaintiff has responded to the motion. For the reasons set forth below, Defendants' motion is GRANTED.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. To prevail on a motion for summary judgment, the moving party has the burden of showing the "absence of a genuine issue of material fact as to an essential element of the nonmovant's case." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The moving party may support the motion with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The opposing party may not rest upon the pleadings but, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of

---

[2] In an order entered on August 3, 2005, the court dismissed the Madison County Sheriff's Department and Gibson County Sheriff's Department as defendants and dismissed the state law claims asserted against all defendants and the punitive damages claim against all defendants except Tommy Buntin, Chad Davis, and Jane and John Does in their individual capacities. Defendant Turner has also been dismissed as a defendant. See Order 1/6/06.

the matter, however. Anderson, 477 U.S. at 249. Rather, "[t]he inquiry on a summary judgment motion . . . is . . . 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" Street, 886 F.2d at 1479 (quoting Anderson, 477 U.S. at 251-52). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).

## Madison County Defendants

The allegations as they pertain to the Madison County Defendants are as follows. Plaintiff and his former employer, Alvin Lay, had a dispute over a $40,000 insurance check. Second Amended Complaint at para. 16. Lay accused Plaintiff of forging his name on the check. Id. at para. 18. Subsequently, Lay went to the Medina Police Department and swore out a warrant against Plaintiff for forgery. Id. at para. 20.

On June 7, 2004, officers with the Madison County Sheriff's Department and Tennessee Highway Patrol arrested Plaintiff pursuant to the arrest warrant that had been issued by Gibson County. Plaintiff was handcuffed, placed in a patrol car, and taken to Gibson County, where he was released to Medina Police Investigator Chad Davis. Id. at para. 22. On the same night that Plaintiff was arrested, Tommy Buntin, a former Madison County Sheriff's Department deputy and current part-time bailiff for the Sheriff's Department, called Westside Cleaners, which was formerly owned by Alvin Lay, and asked to speak to Lay. Id. at para. 25.

Plaintiff contends that the Madison County Defendants "assisted or participated" in

Plaintiff's alleged false arrest and the setting of excessive bond. Id. at para. 26. Plaintiff also contends that Defendant Woolfork is liable for the actions of his employees by virtue of having a "pattern, practice or custom of lax supervision, [and] inept investigations." Id. at para. 39.

False Arrest and Excessive Bond Claim

T.C.A. § 40-6-214 provides that "Clerks of courts of general sessions and their duly sworn deputies have jurisdiction and authority, concurrent with that of the judges thereof, to issue warrants for the arrest of persons." T.C.A. § 40-11-105 provides as follows:

> (a)(1) When the defendant has been arrested and/or held to answer for any bailable offense, the defendant is entitled to be admitted to bail by the committing magistrate, by any judge of the circuit or criminal court, or by the clerk of any circuit or criminal court; provided, that if admitted to bail by the clerk of any circuit or criminal court, the defendant has a right to petition the judge of such court if the defendant feels that the bail set is excessive, and shall be given notice of this fact by such clerk.
>
> (2) The clerk of any circuit or criminal court may only admit the defendant to bail when the judge is not present in the court and the clerk reasonably believes that the judge will not be present within three (3) hours after the defendant has been committed to the county or city jail, following arrest.
>
> (b) In no event may a clerk set the amount of bail in excess of:
>
> (1) One thousand dollars ($1,000) if the defendant is charged with a misdemeanor;
>
> (2) Ten thousand dollars ($10,000) if the defendant is charged with a felony that does not involve a crime committed against a person;
>
> (3) Fifty thousand dollars ($50,000) if the defendant is charged with a felony that involves a crime committed against a person; or
>
> (4) One hundred thousand dollars ($100,000) if the defendant is charged with some form of homicide.

It is undisputed that Dawn Turner, a deputy court clerk for Gibson County, prepared the arrest warrant and set the bond. Plaintiff contends that the Madison County Defendants should have known that the warrant was not valid because Plaintiff's bond of $200,000 exceeded the limits of T.C.A. § 40-11-105 and because Judge Webb's name was typed in as setting the bond, even though it was set by Deputy Clerk Turner.

Plaintiff is in error. The existence of a facially valid warrant at the time of the arrest gave Defendant Officers probable cause to arrest Plaintiff. Law enforcement officers are entitled to rely on the existence of a facially valid warrant. See Duckett v. City of Cedar Park, 950 F.2d 272 (5th Cir.1992) (Police officer acted reasonably in disregarding claims of arrestee and his family that the warrant had been recalled when officer confirmed the validity of the warrant through official channels); Mitchell v. Aluisi, 872 F.2d 577 (4th Cir.1989) (arrest based on facially valid warrant did not violate due process when sheriff's office had not received notice that the warrant had been cancelled); Lauer v. Dahlberg, 717 F. Supp. 612 (N.D. Ill.1989) (officer was entitled to rely on information received from LEADS despite having been presented with an uncertified copy of a warrant recall order), *aff'd*, 907 F.2d 152 (7th Cir.1990).

In Duckett, the police continued to hold Duckett, whose mother told police that the outstanding warrant had been withdrawn, after they received a teletyped confirmation from the county which showed an outstanding warrant. The next morning they released Duckett after receiving another teletype informing them that the warrant had been withdrawn. Duckett then brought an action for false imprisonment. The Fifth Circuit held that a "plaintiff may state a constitutional claim if, after the police officers make an arrest pursuant to a warrant,

the police officers fail to release the arrestee after they receive information upon which to conclude beyond a reasonable doubt that such warrant had been withdrawn." Id. at 279. However, there is no requirement that the officers conduct an investigation regarding the warrant's validity. Id. at 279 n. 12 (citing Baker v. McCollan, 443 U.S. at 145-146.) The court determined that the officers were entitled to qualified immunity because their actions in not releasing plaintiff prior to the teletyped confirmation indicating that the warrant had been withdrawn were objectively reasonable. Id. at 280.

When the defense of qualified immunity is raised, the plaintiff bears the burden of establishing that the "contours" of the constitutionally right allegedly violated were sufficiently clear, at the time of the alleged violation and in relation to the acts committed, "that a reasonable official would understand that his or her conduct violate[d] that right." Wegener v. City of Covington, 933 F.2d 390, 392 (6th Cir. 1991); Anderson v. Creighton, 483 U.S. 635, 640 (1987). The plaintiff may not allege the violation in terms of a general, abstract right in order to survive summary judgment. Anderson, 483 U.S. at 639-40. Rather, the plaintiff must establish that "in light of pre-existing law the unlawfulness [was] apparent," id. at 640, such that "any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." Poe v. Haydon, 853 F.2d 418, 425 (6th Cir. 1988), cert. denied, 488 U.S. 1007 (1989).

The determination of whether such a clearly established legal right existed is to be decided by the court as a matter of law. Dominque v. Telb, 831 F.2d 673, 677 (6th Cir. 1987). If the "undisputed facts show that defendant's conduct . . . did not violate [that] clearly

established legal right[]," the court must grant summary judgment for the defendant. Id. at 425. If, however, "there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate[d] clearly established rights," the court must deny summary judgment. Poe, 852 F.2d at 426 (parenthetical in original).

As discussed above, Plaintiff has not shown that Defendant Madison County Officers violated his federal constitutional rights. Even though Judge Webb's name was typed on the warrant, Deputy Clerk Turner had the statutory authority to issue the warrant and set bond. The action of these officers in relying on the arrest warrant in their possession without investigating its validity was objectively reasonable.[3] Thus, Defendant Officers are qualifiedly immune on this claim.[4]

The Eighth Amendment provides all criminal defendants a right to be free from excessive bail. Violation of that right can give rise to a claim under 42 U.S.C. § 1983. See Wagenmann v. Adams, 829 F.2d 196 (1st Cir.1987). "[B]ail is excessive under the Eighth Amendment only when it is set in an amount greater than that required for reasonable assurance of the presence of the defendant." United States v. Salerno, 481 U.S. 739, 752

---

[3] There is nothing in the record indicating that Defendant Officers had notice that the warrant might not be valid, and the court makes no determination at this point as to whether the warrant was valid or not.

[4] Qualified immunity is an entitlement not to go to trial, not merely a defense from liability . Saucier v. Katz, 533 U.S. 194, 200 (2001). Analysis of the qualified immunity defense is a two step process. The initial inquiry is whether, on the facts alleged, a constitutional right has been violated. If no such right has been violated, plaintiff cannot prevail. Id. If a violation of a constitutional right does or may exist, the court must consider whether that right was "clearly established." "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. In other words, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."

(1987). Assuming without deciding that the bail bond set for Plaintiff was excessive, the court must decide whether Plaintiff can bring a claim against these defendants for the setting of his bond.

Courts are divided as to whether enforcement officers can be held liable in a civil rights action for damages for violating a criminal defendant's right to reasonable bail. See Lutz v. Lavelle, 809 F. Supp. 323, 327 (M.D. Pa.1991)(dismissing a § 1983 claim for failure to provide reasonable bail, stating that a state prosecutor may not be held liable for excessive bail because setting bail is within the sole province of the judicial authority); but see Wagenmann v. Adams, 829 F.2d at 211-212 (a law enforcement officer may be liable in a § 1983 excessive bail claim if he "help[s] to shape" or "exercis[es] significant influence over the bail decision.)

In the present case, Defendants have presented the affidavit of Madison County Sheriff Woolfork which states that his officers' only involvement in the arrest of Plaintiff was to arrest Plaintiff pursuant to the Gibson County arrest warrant and turn him over to Gibson County officials. Woolfork Affidavit at Defendants' Exhibit 2. Plaintiff has offered no countervailing evidence that the Madison County officers exercised any influence over the bail process. Thus, even if there were a triable issue of fact as to whether $200,000 bail was unconstitutionally "excessive," Defendants would still be entitled to summary judgment on the excessive bail claim.

Defendants Madison County and Woolfork

The claims against Defendant Woolfork are based on his role as the supervisor of the

individual officers. A supervisor cannot be held liable under a traditional theory of respondeat superior; instead, a § 1983 plaintiff must demonstrate that the supervisor "directly participated in or encouraged the alleged deprivations." Leach v. Shelby County Sheriff, 891 F.2d 1241, 1246 (6th Cir.1989). Liability against a supervisory official may be imposed only if the actions or non-actions of that official proximately cause a constitutional deprivation. Rizzo v. Goode, 423 U.S. 362 (1976). Because Plaintiff was not deprived of any constitutional right by the officers supervised by Defendant Woolfork, he cannot be held liable under § 1983. See e.g., Newby v. Serviss, 590 F. Supp. 591(D.C. Mich.1984) ("Since no deprivation occurred, defendant [supervisors] cannot be held liable for causing that deprivation.")

Likewise, Plaintiff has no claim against Madison County. Plaintiff alleges that Madison County had a policy of basing arrests on "incomplete and invalid warrants." Second Amended Complaint at para. 17. Because the arrest warrant at issue in this case was facially valid, Plaintiff has failed to show that any Madison County policy or practice contributed to his alleged constitutional deprivation. However, even if the warrant had been invalid, under § 1983, a policy or custom cannot be shown by one instance of misconduct, see Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir.2005), and Plaintiff has pointed to no other incidents in which Madison County law enforcement officials allegedly arrested citizens based on "incomplete" or "invalid" warrants.

Defendant Buntin

It is undisputed that Defendant Buntin (1) was retired from the Madison County

Sheriff's Department as an investigator at the time of the relevant events and served as a bailiff for Madison County, (2) was a friend of Alvin Lay, and (3) told Lay to contact law enforcement officials about Plaintiff's alleged forgery. Defendants have submitted the affidavit of Madison County Sheriff Woolfork which states that Defendant Buntin was not involved in the investigation or arrest of Plaintiff. Woolfork Affidavit at Defendants' Exhibit 2. Defendant Buntin's affidavit states that the only law enforcement advice he gave Lay was to contact the authorities if he thought a crime had been committed. Buntin Affidavit at Defendants' Exhibit 3. He further states that he had no contact with the Medina Police Department about this matter and did not in any way "act in a law enforcement officer capacity." Id. Buntin also states that he is not certain if he made a phone call to Westside Cleaners on the night of Plaintiff's arrest. Id.

Plaintiff has presented the affidavit of his wife, Diane Boling, who states that she answered the phone at Westside Cleaners on the night of Plaintiff's arrest and that Buntin called to speak to Lay. D. Boling Affidavit at Plaintiff's Exhibit 2. Consequently, the court finds that, for the purpose of deciding this motion, Buntin did, in fact, make the phone call. Plaintiff has also submitted the affidavit of Chris Maxwell which states that he was "told by Alvin Lay that if it hadn't been for Tommy Buntin, David Boling probably would not have been arrested." Maxwell Affidavit at Plaintiff's Exhibit 3. The affidavit further states that "Alvin Lay stated that Tommy Buntin had helped push through David Boling's arrest." Id.

> Rule 56(e) of the Federal Rules of Civil Procedures provides in relevant part:
>
> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show

affirmatively that the affiant is competent to testify to the matters stated therein.

The non-moving party cannot avoid summary judgment by trying to create a material issue of fact through inadmissible evidence. Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 191 (5th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 n. 19 (1970). See also U.S. v. Glass Nursing & Convalescent Homes, Inc., 550 F. Supp. 1149, 1154 (S.D. Ohio 1982); Inmates, Washington Cty. Jail v. England, 516 F. Supp. 132, 138 (E.D. Tenn. 1980), *aff'd*, 659 F.2d 1081 (6th Cir. 1981). Because the statements made by Maxwell concerning Defendant Buntin constitute inadmissible hearsay, the court cannot consider them in ruling on Defendants' motion for summary judgment.[5]

Defendants have offered evidence in the form of Defendant Buntin's affidavit that he did not participate in the investigation of the alleged forgery that resulted in Plaintiff's arrest, and Plaintiff has offered no admissible evidence to refute Defendant Buntin's affidavit. The mere fact that Defendant Buntin called Lay on the night of Plaintiff's arrest is not sufficient to create a disputed issue of fact as to Defendant Buntin's lack of involvement in the arrest. Consequently, Defendants are entitled to summary judgment on the claim against Defendant Buntin.[6]

Accordingly, summary judgment is granted to all Madison County defendants.

### Gibson County Defendants

---

[5] Maxwell's statements are not made on personal knowledge and are offered to prove the truth of the matter asserted, i.e., that Defendant Buntin helped ensure Plaintiff's arrest.

[6] Defendants have argued that Defendant Buntin was not acting under of color of state law at the time of the relevant events because he was not employed by the Sheriff's Department as an investigator at that time. The court need not address this argument since the evidence in the record shows that Defendant Buntin did not participate in the investigation.

Plaintiff alleges that, after his arrest, he was taken to jail in Gibson County, where he was kept until June 10, 2004. On that date, his bond was lowered, and he was able to make the reduced bond. Plaintiff complains of the conditions of the jail were as follows: he was placed in a 10 x 12 concrete holding cell; the door had only one window which was hazed over; the bed was concrete with a thin, vinyl mattress and wool blanket; the light in the room stayed on all the time; a ten inch hole in the floor was used as a urinal; he wore the same clothes every day with no shower and no brushing of his teeth and was given "very little to eat." Second Amended Complaint at para. 30. In his response to the motion, Plaintiff acknowledges that he was given water upon request and that he was "provided with the basis necessities as defined by Gibson County jail." Response at pp. 4-5.

" [T]he unnecessary and wanton infliction of pain ⋯ constitutes cruel and unusual punishment forbidden by the Eighth Amendment."[7] Whitley v. Albers, 475 U.S. 312, 319 (1986) (some internal quotation marks omitted). The Eighth Amendment's prohibition on cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement and to take reasonable measures to guarantee the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). As the Supreme Court has explained, however, a prison official's actions or omissions do not trigger liability under the

---

[7] Although the Eighth Amendment does not apply directly to jail detainees in that it only protects those who have been convicted of crimes, see Whitley v. Albers, 475 U.S. 312, 318 (1986), the substantive due process component of the Fourteenth Amendment provides protection for jail detainees that are analogous to the Eighth Amendment protections for convicted prisoners. See Barber v. City of Salem, 953 F.2d 232, 235 (6th Cir. 1992) ("While a pretrial detainee does not enjoy protection of the Eighth Amendment, the Eighth Amendment rights of prisoners are analogous to pretrial detainees' due process rights under the Fourteenth Amendment."); see also Bell v. Wolfish, 441 U.S. 520, 545 (1979) (Pretrial detainees who have not been convicted of any crimes retain at least the same constitutional rights enjoyed by convicted prisoners). Thus, Fourteenth Amendment substantive due process liability attaches when jail officials are deliberately indifferent to the needs of pretrial detainees.

Eighth Amendment without a finding of deliberate indifference, which is the equivalent of "recklessly disregarding" a risk. Id. at 835. Thus, Plaintiff must establish not only that Gibson County officials were aware of facts from which one could raise the inference of a substantial risk of harm to his safety, but also that the officials, in fact, drew that inference. Id. at 837. This requirement exists because the Eighth Amendment does not extend liability to an official's failure to exercise due care, but only extends liability to such willful disregard as can be considered the infliction of punishment. Id.

In order for conditions of confinement to amount to a sufficiently serious deprivation of a constitutional right, the plaintiff must establish that the conditions denied "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The conditions must "fall below our 'evolving standards of decency.'" Birrell v. Brown, 867 F.2d 956, 958 (6th Cir. 1989) (quoting Rhodes, 452 U.S. at 346). The Rhodes Court noted that, in Hutto v. Finney, 437 U.S. 678 (1978), the district court found cruel and unusual punishment because the conditions of confinement "resulted in unquestioned and serious deprivations of basic human needs." Rhodes, 452 U.S. at 347.[8]

Plaintiff's allegations fall far short of the egregious nature of the conditions in Hutto. It is undisputed that, during his three night confinement, Plaintiff was given food and water

---

[8] The conditions in Hutto that the Court found sufficient to make out an Eighth Amendment violation included: (1) sixty hours of hard labor per week, regardless of weather; (2) large barracks in which there were seventeen stabbings in one eighteen month period and homosexual rape so "common and uncontrolled" that some inmates would not sleep at night; (3) lashing inmates with a five-foot-long leather strap; (4) using a hand-cranked electrical shock device on various sensitive parts of prisoners' bodies; (5) issuing guns to inmate "trusties" who could "murder another inmate with practical impunity"; (6) access to medical services only by bribing a "trusty"; and (7) malnourishment of prisoners in isolation. Hutto v. Finney, 437 U.S. 678, 681-83 & n.3-7 (1978) (describing the conditions found to be unconstitutional).

and a bed, mattress, and blanket.  He was protected from other detainees in his solitary cell. There are no allegations that he was deprived of any needed medical care.  While Plaintiff may have been uncomfortable during his confinement, he has failed to show that he was deprived of any of his "basic human needs."  Therefore, the Gibson County Defendants are entitled to summary judgment on Plaintiff's claims as they relate to his jail confinement.

The Gibson County Defendants are also entitled to summary judgment on Plaintiff's claims of false arrest and excessive bail for the same reasons that entitle the Madison County Defendants to summary judgment.  Plaintiff was arrested and incarcerated pursuant to a facially valid arrest warrant, and Defendant Shepherd played no role in the setting of Plaintiff's bond.  Additionally ss noted above, even if Plaintiff was deprived of his constitutional rights, one incident cannot create a policy or pattern that would give rise to § 1983 liability on the part of Gibson County.  Consequently, Gibson County and Gibson County Sheriff Shepherd are dismissed from the action.

John and Jane Doe Defendants

In the original complaint filed on May 5, 2005, Plaintiff named as defendants "Jane and John Does" who were "believed to be residents of Memphis, Shelby County, Tennessee," and who were deputies with the Gibson County and Madison County Sheriff's Departments and the Medina Police Department at all relevant times. Plaintiff also named these defendants in his amended complaint filed on October 21, 2005, and in the second amended complaint filed on November 14, 2005.

It is well settled that a complaint cannot be commenced against fictitious parties. Bufalino v. Michigan Bell Tel. Co., 404 F.2d 1023, 1028 (6th Cir.1968); see also Cox v. Treadway, 75 F.3d 230, 240 (6th Cir.1996) (explaining that a claim naming fictitious "John Doe" defendants does not commence an action and that a subsequent amendment identifying the defendant can relate back only if the conditions of Fed. R. Civ. P. Rule 15(c) are met). Thus, to the extent that Plaintiff seeks to bring claims against John and Jane Doe officials, he must identify those individuals and file a new lawsuit within the one year statute of limitations applicable in § 1983 actions, see T.C.A. § 28-3-104(a), unless he can show that the unnamed defendants had notice of the action. The mere fact that Gibson County had notice of the action does not equate to notice of individual officers of Gibson County.[9] See Dye v. City of Warren, 367 F. Supp.2d 1175, 1182 (N.D. Ohio 2005) (Doe defendants had

---

[9] Plaintiff characterizes his Doe Defendants as "unnamed Gibson County personnel who were involved with the events of this suit." Response at p. 11. In reality, Plaintiff's description of the Doe Defendants in the complaints is not so broad. At most, he has sued law enforcement officers who were involved with the relevant events - not all Gibson County personnel. See Amended Complaint at para. 10 and Second Amended Complaint at para. 11 ('Defendant Does were duly appointed sheriff's deputies, law enforcement and/or personnel with Gibson County, Gibson County Sheriff's Department, City of Medina, City of Medina, City of Medina Police Department, Madison County and Madison County Sheriff's Department, **assigned to the patrol or other Units, acting ... within the course and cope of their employment with the Departments** (emphasis added.))

no constructive notice of the lawsuit when they were "rank and file officers" and not "high officials" who would have been involved in the city's legal disputes.)

Some courts have recognized the ability of a plaintiff to sue unnamed defendants if the plaintiff provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served.  See, e.g., Billman v. Indiana Dep't of Corrections, 56 F.3d 785 (7th Cir. 1995); Dean v. Barber, 951 F.2d 1210 (11th Cir. 1992); Munz v. Parr, 758 F.2d 1254 (8th Cir. 1985);  Maggette v. Dalsheim, 709 F.2d 800 (2nd Cir. 1983).  The description of the John and Jane Doe defendants in the present complaint is clearly not adequate to allow service of process, and Plaintiff has made no attempt in the eight months since the original complaint was filed to identify those defendants so that they can be served with process.

The Doe Defendants are dismissed from the action on the additional grounds that (1) there are no specific allegations in the complaint, amended complaint, or second amended complaint against them Doe Defendants and (2) to the extent that the complaints make the same allegations against the Doe Defendants as against Madison County and Gibson County officials, the Doe Defendants are entitled to summary judgment for the same reasons as stated above.[10]

---

[10] Plaintiff attempts to rely on the fact that this court allowed him to amend his complaint.  However, in the orders allowing the amendments, the court did not address the merits of Plaintiff's claims against the Doe Defendants.

Summary and Conclusion

The motion to dismiss and/or for summary judgment of Defendants Gibson County, Gibson County Sheriff Joseph Shepherd, Madison County, Madison County Sheriff David L. Woolfork, Tommy G. Buntin, and Jane and John Does is GRANTED. Remaining as defendants are the City of Medina, the City of Medina Police Department, Medina Chief of Police James Baker, and Investigator Chad Davis of the Medina Police Department.
IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE